LEWIS F. SCOFIELD *v.* BENJAMIN SANDERS AND E. W. SYL-
VESTER, TRUSTEE.

### *Trustee Process.*

Where E. advanced money and paid certain debts for B., and received as security for such advancement, certain personal property, and about the same time E. took a conveyance of B.'s real estate, under an agreement that E. should pay off the incumbrances on the same, and support B. and his wife, and E. supposed that all that B. then owed was secured by mortgage upon said real estate, and acted in the utmost *good faith;* E. was summoned as the trustee of B., and it was held, that E. could apply the personal property in payment of his own debt, and that the application was a legal one; and that E. was not chargeable as trustee of B.

TRUSTEE PROCESS. The suit was commenced before a justice of the peace, and came to the County Court by appeal on the part of the trustee.

The trustee disclosed, that in 1849, he had some business with the principal debtor, and that in March, 1850, the principal debtor was indebted to him to an amount exceeding one hundred dollars, besides a large amount which he had paid to third persons, at the request and for the benefit of the principal debtor. That in March, 1850, he bought of the principal debtor some farming tools and stock, to the amount of one hundred and twenty-nine dollars, as part payment of said debt; that since that time, he had been pay-

ing out large sums for the principal debtor, and received nothing back; and that the principal debtor owes him over one hundred dollars.   In answer to an interrogatory, the trustee further discloses, and says: " Benjamin Sanders gave me a quit-claim deed " of 120 acres of land in Sudbury, which deed bears date 13th of " March, 1850.   The consideration of this transfer is fully ex- " pressed in a contract in writing between said Sanders and myself, " which contract is as follows:

" This agreement, made by Benjamin Sanders and E. W. Syl- " vester, witnesseth: That for and in consideration of the said " Benjamin Sanders having this day executed to the said E. W. " Sylvester, a quit-claim deed of the premises on which the said " Sanders resides, consisting of about 120 acres of land, I, the said " Sylvester, agree to occupy, manage and conduct said premises, " and direct the operation of farming, devoting my time to the " same, and also to use what means I have towards removing the " incumbrances on said premises, and also devoting the income of " the same, over and above what may be necessary for the main- " tenance of myself and family, and the said Benjamin and fam- " ily, towards removing said incumbrances.   And at any time when " the said Benjamin pays me the full amount of all I may contri- " bute towards stocking said premises, paying said incumbrances, " or that I may in any way advance to said Sanders, with a reason- " able compensation for my services in conducting said premises, " then I am bound to re-deed to him.   Or, after I have paid and " released said premises, from said incumbrances, I will then exe- " cute to said Sanders a life lease, or mortgage lien of the same, to " secure the support and maintenance of the said Benjamin and " his wife Susan, during their lives; it being understood, and I the " said Benjamin agree to give all the aid in my power towards the " carrying on of said premises; and all the income over and above " what may be necessary for the support of my family, and the " said Sylvester and family, shall be devoted towards paying the " debts against said property.   It being understood I have no right " or claim on said Sylvester to re-deed said premises, until I have " paid him the full amount of all monies or property he may use " or devote to the paying of debts for me, stocking said farm, or in " any other way, for my benefit, with interest thereon, and also pay " him a reasonable compensation for his services in carrying on

" said premises: and all monies or articles advanced by said Syl-" vester shall be charged, and a memorandum kept thereof.

" In witness whereof, we hereunto subscribe our names, this " 13th day of March, 1850.

" (Signed)    BENJAMIN SANDERS,<br>E. W. SYLVESTER."

The trustee also disclosed that the principal debtor had no claim against him other than those herein before set forth, and the said Sanders was indebted to him to the amount of about $439,63; that said farm was occupied and managed in every respect according to the contract, and that said Sanders lived with him part of the time, and received his support, for which he had compensated trustee in a measure by his labor upon the farm, as specified in the contract. That there was no particular contract under which trustee paid debts of principal debtor; that he married into his family, and at the time of the payments was on the farm; and when the claimants came, Sanders requested him to pay them, and he, Sanders, would see trustee compensated; and that trustee did so, expecting that each one was the last, &c.

The plaintiff filed his allegations, claiming that from the disclosure the trustee was chargeable.

The County Court,—COLLAMER, J., presiding,—found the facts stated in the disclosure and answers to be true in fact; and thereupon decided and rendered judgment that the said Sylvester is not chargeable as trustee of the said Sanders.

Exceptions by plaintiff.

*Briggs & Conant* for plaintiff.

The whole sale is fraudulent with respect to existing creditors. A creditor might therefore have taken his option, to attach the real estate, or the personal property, or to pursue the trustee. *Crane* v. *Stickles,* 15 Vt. 252. *Briggs* v. *Beach,* 18 Vt. 115. *Jones* v. *Spear,* 21 Vt. 426. *Carey* v. *Powers,* 18 Vt. 587. *Hunter* v. *Case,* 20 Vt. 195.

It is manifest, that Sylvester could secure to himself a quiet title to this real estate, only by paying off the existing debts of Sanders; since each creditor was at liberty to levy upon the same, for the satisfaction of his claim. Sylvester therefore paid the claims as they were presented.

Scofield *v.* Sanders and Trustee.

We think, that as the trustee could have enforced his claims against the real estate, the court will scarcely compel their application upon the personal property, for the purpose of defeating the remedy of a *bona fide* creditor.

*Parker & Nicholson* for trustee.

The validity of the transaction cannot be affected by the fact that Sanders owed other debts, because " a creditor has the same " right to secure himself by contract that he has by attachment."— *Lyon* v. *Rood*, 12 Vt. 233.

The trustee paid nothing to Sanders, and it is no fraud upon *this* creditor that Sylvester paid *other* creditors their just claims.

And he cannot be held chargeable as trustee, by reason of his having a mere record title to the real estate, even if the conveyance were fraudulent, and void as to creditors. *Baxter et al.* v. *Currier*, 13 Vt. 615. *Hunter* v. *Eastman and Tr.*, 20 Vt. 195.

Sylvester's interest in the estate was at most that of mortgage. He held it as collateral security for the payment of such sums as Sanders was, or should be owing him. *Campbell* v. *Worthington*, 6 Vt. 448. *Baxter* v. *Willey*, 9 Vt. 276. *Wright* v. *Bates*, 13 Vt. 341. *Mott* v. *Harrington*, 12 Vt. 199. *Catlin* v. *Chittenden*, Brayt. 163.

And this interest was contingent, and determinable at any time Sanders might elect.

And we cannot clearly perceive how Sylvester would respond to a judgment against him, or effect a delivery of this peculiar kind of " goods, effects or credits."

By the Court. It is not claimed to charge the trustee, in this case, except by compelling him to look to the real estate, for his indemnity for the sums of money which he has paid for the principal debtor, since the conveyance to him. This has sometimes been done, where the trustee is shown to have acted in *bad faith*.

But in the present case, he claims, in his disclosure, to have acted in good faith, believing that Sanders owed no debts, except what were secured by the mortgage, and otherwise provided for. And as he was paying debts from time to time, he believed each one the last. The County Court say they find all the facts, stated in the disclosure. We are to revise the case found by that court.

It must be conceded then, that the trustee acted in the utmost good faith. And if so, he ought to be allowed to apply the personal property, as the debtor and himself understood the matter, in payment of his own debt.

And as this debt either existed at the time of the conveyance, or grew out of the payment of debts which did then exist, this application of the personal property is, in the strictest sense, a legal application, one which would so far purge any previous fraudulent purpose, even.

It is admitted he cannot be adjudged trustee, by reason of holding the real estate, and if the real estate is still liable for Sanders' debts, the plaintiff can have his redress there.

Judgment affirmed.

