## Moss & Co. v. DEARING ET AL.

1. **Evidence:** ADMISSIONS. In an action to set aside a conveyance as fraudulent, the admissions of the grantor to third persons before the conveyance was made that he was indebted to the grantee are admissible.

2. **Conveyance:** WHEN NOT FRAUDULENT: JUDICIAL SALE. Where a party who is indebted to another procures a conveyance of real estate which he has purchased to be made to the creditor, and the latter receives it in good faith with no other apparent intention than to secure his claim, his title will not be defeated by a subsequent confession of judgment by his grantor in favor of another creditor, and a sale of the property under execution issued upon the judgment.

*Appeal from Wapello District Court.*

THURSDAY, APRIL 5.

THE material averments of the petition are in substance as follows: It is charged that on the 28th day of December, 1865, plaintiffs recovered a judgment by confession against the defendant, Wm. Dearing, for $1,500. On the 11th day of January, 1866, an execution was issued on said judgment, and a levy was made on a lot in the city of Ottumwa; that said lot was duly appraised, advertised for sale, and sold to the plaintiffs, and a sheriff's deed made to them therefor; that at the time of the levy and sale the legal title to said lot was in the name of C. D. Hamilton and Ann Hamilton, defendants, who took their title from M. J. Williams; that defendant, Dearing, paid the entire consideration for said lot, and that at the time of said conveyance he was largely in-

debted in the State of Missouri, and caused the conveyance of said property to be made to said Hamiltons to prevent the same from being subjected to the payment of his debts, and that the said Hamiltons well knew that said conveyance was so made for said fraudulent purpose; that the defendants, A. P. Shafer and W. C. Hearn, purchased or pretended to purchase said lot from C. D. Hamilton and A. E. Hamilton, but that they had no right to said land because they purchased with full knowledge of plaintiff's rights thereto, and these proceedings against said lot.

The prayer of the petition is that the plaintiffs' title to the lot in question be quieted, and for general relief.

The defendants, C. D. and Ann Hamilton, claim that defendant Dearing was indebted to them, and purchased said lot and caused the deed therefor to be made to them in good faith, as part payment of said indebtedness, which was accepted in good faith, and that they had no knowledge of any design on the part of said Dearing to defraud his creditors. They deny that Dearing was in good faith in debt to plaintiffs at the time said judgment was rendered, and allege that said judgment was part of a fraudulent scheme to cheat said defendants out of said lot. They further allege that they sold and conveyed said lot to the defendants, A. P. Shafer and Wm. C. Hearn, on the 18th day of August, 1866, and ask that the title thereof be quieted in said parties.

Defendants Shafer and Hearn aver that they are the owners of said lot; that they purchased the same for a full and valuable consideration, in good faith, and without any knowledge of said lot being conveyed to said Hamiltons by said Dearing with any fraudulent intent. They ask that their title be quieted.

There was trial by the court, and a decree entered dismissing plaintiffs' petition and quieting title to the property in controversy in the defendants, Shafer and Hearn. Plaintiffs appeal.

*Stiles & Burton*, for appellants.

*W. H. C. Jaques*, for appellees.

ROTHROCK, J. — I.   Objection is made by appellants to certain parts of the deposition of the defendant, C. D. Hamilton, and also to parts of the deposition of Aaron Hamilton.

1. EVIDENCE: admissions.   The testimony objected to relates to conversations with the defendant Dearing at and about the time the conveyance was made to C. D. Hamilton, as to the object and purpose of the conveyance, and the alleged indebtedness from Dearing to C. D. Hamilton.  We think the objections are not well taken.   It was competent for the defendant, C. D. Hamilton, to prove his alleged contract with Dearing in the same manner that any other issue could be proved.   He could not be limited to calling Dearing as a witness, but had the right to show the good faith of the conveyance to him by Dearing's conversations and admissions, which occurred before the plaintiffs acquired any interest in the property.   Surely, the statement made to Aaron Hamilton in October, 1865, that on a fair settlement he (Dearing) owed C. D. Hamilton $480 or $485, was admissible as between these parties to prove the fact.   Greenleaf on Ev., vol. 1, Sec. 181.

II.   There are some conceded facts in the case which will be briefly stated.   Dearing paid Williams for the lot in controversy, and directed the conveyance to be made to C. D. and Ann Hamilton.   The deed was retained by Dearing.   It has never been delivered to the grantees, nor filed for record.   The plaintiffs claim under a sheriff's deed founded upon a confession of judgment made by Dearing in their favor for $1,500, part of the purchase price of a farm, the payment of which they assumed for Dearing.   Dearing removed from the State of Missouri to this State in 1864, a short time before the purchase of the property in controversy.   He was surety on a sheriff's bond in Missouri, upon which he was liable for a large amount on account of some default of the sheriff, and this claim was an existing debt against him when the property in controversy was purchased.   Shortly after the purchase C. D. Hamilton and Dearing both removed into the house on the lot and continued to reside there for some months, when they had

2. CONVEYANCE: when not fraudulent: judicial sale.

some disagreement and Hamilton returned to Missouri, where he has since resided.

There can be no question that the title to the property passed from Williams to some one. It did not pass to Dearing. The plaintiffs aver in the petition that it passed to C. D. and Ann Hamilton. Of this there can be no doubt. But plaintiffs insist that the transaction was a fraud upon the creditors of Dearing, and that therefore the lot should be subjected to the payment of Dearing's debts. This is the material question in the case.

Dearing appears in the case as a witness, and, if we were to accept his testimony as true, there is no doubt that his intentions were fraudulent. But, aside from an impeachment to some extent, his position in the case, to say the least, is not such as to carry with it the highest regard for his credibility. His testimony is far from being in harmony with that of Moss, one of the plaintiffs. He denies generally that he was indebted to C. D. Hamilton, when the conveyance was made.

On the other hand there are two witnesses who contradict him as to his indebtedness to Hamilton. A. H. Hamilton testifies that in October, 1865, Dearing told him that he was justly indebted to C. D. Hamilton in the sum of $480 or $485. This conversation is not denied by Dearing.

C. D. Hamilton testifies that Dearing was indebted to him in the sum of $700 or $800, and that the property in controversy was conveyed to him to secure his debt. In addition to this we have the fact that Dearing kept possession of the deed, and the fact that both Hamilton and Dearing took possession of, and lived in the house upon the premises, and that in the year 1865 Dearing expended some $1,300 in improvements upon the lot, and the further fact that Dearing and the plaintiffs herein have been receiving the rents ever since Hamilton removed from the property in 1865.

Taking all these facts into consideration, we think it is clearly established that Dearing was indebted to Hamilton in the sum of about $480, and that the conveyance was procured by Dearing to be made to Hamilton, by way of security for the debt. We can account for the extensive improvements

put upon the property by Dearing in no other way. That there was any fraudulent purpose or intent upon the part of Hamilton, or that he had any knowledge of such fraud upon the part of Dearing, we do not think is established by the evidence. At least we may say that nothing appears upon the part of Hamilton further than an intention to secure an honest claim. If this was his honest purpose the transaction is not tainted with fraud, even though he knew that the effect of the transaction was the preference of his claim over that of other creditors.

It follows, therefore, that if Hamilton's claim was a valid one, and he held the property as a security for his debt, the confession of judgment by Dearing, and the sheriff's sale and deed, cannot prejudice his rights or that of his assignees, Shafer and Hearn. They were not parties to the proceedings, and the record title was not in such condition as to mislead the plaintiffs. An examination would have shown the title in Williams and the presumption is that inquiry would have developed the rights of the respective parties.

The cause is triable anew in this court, and the plaintiffs ask that their title be quieted and for general relief.

Our conclusion is that the deed from Williams must be held as a security to Hamilton for his debt, upon the discharge of which the plaintiffs are entitled to a decree quieting title in them. We find the debt to be $480, with interest at six per cent from October 1, 1865. Upon the payment of this amount, with costs in the court below, the plaintiffs shall have decree quieting title in them. If they fail to make such payment in 90 days from the filing of this opinion, the defendants Shafer and Hearn shall have decree quieting title in them. The defendants to pay the costs of this court.

MODIFIED AND AFFIRMED.